UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BARBARA C. HALOUVAS,

                Plaintiff,

-against-

MAUI OPERATING LLC, STARWOOD HOTELS & RESORTS WORLDWIDE, INC., MARRIOTT INTERNATIONAL, INC., and WESTIN OPERATOR LLC,

                Defendants.

**MEMORANDUM & ORDER**
**17-CV-7104 (NGG) (ST)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Barbara Halouvas fell and injured her knee while attending a luau hosted by the Westin Maui Resort & Spa, owned and operated by Defendants, at which she was a guest. She brought this action, seeking monetary damages for Defendants' alleged negligence. At the close of discovery, Defendants moved for summary judgment. (*See* Mem. in Supp. of Defs.' Mot. for Summ. J. ("Mem.") (Dkt. 34); Pl.'s Mem. in Opp. to Mot. for Summ. J. ("Opp.") (Dkt. 34-1); Defs.' Reply (Dkt. 34-2).) That motion is now before the court. For the following reasons, Defendants' motion is GRANTED with prejudice.

## I. BACKGROUND

In March 2017, Mrs. Halouvas and her husband, Gus, took a trip to Hawaii with their children and granddaughter to celebrate their fortieth wedding anniversary.[1] (*See* Tr. of Pl.'s Dep. ("Pl.

---

[1] The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements and the admissible evidence they submitted. Except where otherwise noted, the following facts are undisputed. Where the parties allege different facts, the court notes the dispute and credits

Tr.") (Dkt. 34 at ECF pp. 52-193) at 19:2-6.) On the evening of March 21, Mrs. Halouvas and her husband, son, and daughter-in-law attended an outdoor luau at their hotel, the Westin Maui Resort & Spa. (Defs.' Rule 56.1 Statement ("56.1") (Dkt. 34 at ECF pp. 27-30) ¶¶ 1-2, 4.) Soon after arriving, the Halouvas family walked towards a photo staging area to take a picture. (*Id.* ¶ 9.) As she walked, Mrs. Halouvas felt her right foot catch and fell to the ground onto her right knee. (*Id.* ¶ 10.) Mrs. Halouvas did not see what caused her to fall. (*Id.* ¶ 11.) Mr. Halouvas, who was walking behind her, saw her fall and stated that she tripped on a depression in the stone floor. (*Id.* ¶ 12.; Tr. of Dep. of Gus Halouvas ("G. Halouvas Tr.") (Dkt. 34 at ECF pp. 195-246) at 21:4-10.) There was no loose or detached stone on the ground. (*Id.* at 16-23.) Mr. and Mrs. Halouvas's son and daughter-in-law were walking ahead and did not see Mrs. Halouvas fall. (*Id.* at 18:8-11.) Mrs. Halouvas's family helped her to her feet and a server brought her ice. (Pl. Tr. at 47:15-20.) She returned to her room approximately 30 minutes later. (*Id.* at 50:19-22.)

That night, Mrs. Halouvas was unable to sleep due to knee pain. (*Id.* at 53:5-11.) The following morning, Mr. Halouvas reported the accident to a hotel employee at the front desk, who provided him with the details for a nearby Urgent Care facility and said that hotel staff would discuss the incident when Mr. and Mrs. Halouvas returned from Urgent Care. (G. Halouvas Tr. at 22:10-23:2.) Mrs. Halouvas was seen at the Urgent Care facility, where she was examined, x-rayed, and diagnosed with a fractured right patella. (Pl. Tr. at 83:14-85:25.) Later that afternoon, she saw an orthopedic surgeon. (*Id.* at 86:13-87:2.) Around 7:00 p.m. that evening, approximately 24 hours after the fall, a hotel security

---

Plaintiff's version if it is supported by evidence in the record. All evidence is construed in the light most favorable to the non-moving party with all "reasonable inferences" drawn in her favor. *ING Bank N.V. v. M/V Temara, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).

guard came to her room to discuss the incident. (*Id.* at 55:25-56:12.) Mr. Halouvas described to the guard what had happened and where Mrs. Halouvas had fallen. (G. Halouvas Tr. at 23:14-20.) Mr. Halouvas and the guard then went downstairs to inspect the scene of the incident. (*Id.*) According to Mr. Halouvas, as he and the security guard approached the area where Mrs. Halouvas fell, the guard told him, "I know where it is, thank you." (*Id.* at 23:14-20, 28:8-14.) Mr. Halouvas also took pictures of the depression in the ground with his cell phone. (*See* Defs.' Photo Exs. (Dkt. 34) at ECF pp. 248-251.)

Mrs. Halouvas returned home to New York, where she continued to experience pain and received ongoing treatment for her injured right knee. (Pl. Tr. at 90:4-99:6.) On December 6, 2017, she filed suit for negligence. (*See* Compl. (Dkt. 1); Amend. Compl. (Dkt. 15).)[2]

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*,

---

[2] Mrs. Halouvas is a New York domiciliary. (Amend. Compl. ¶ 6.) Defendants are citizens of states other than New York. (Ans. (Dkt. 16) ¶¶ 8-10.) The court possesses subject matter jurisdiction based on diversity of citizenship. *See* 28 U.S.C. § 1332. Defendants consent to the court's personal jurisdiction. (*See* Ans. ¶¶ 11-26.)

653 F.3d 156, 164 (2d Cir. 2011).[3] "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant may discharge its initial burden by demonstrating that the non-movant "has 'failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 225 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986)). While the court must draw all inferences in favor of the non-movant, the non-movant "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).

## III. DISCUSSION

Where jurisdiction is predicated on diversity of citizenship, the court applies the forum state's choice of law rules. *See Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015). Under New York law, "the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *See Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). In New York, to be held liable for a personal injury resulting from a dangerous or defective condition on a defendant's premises, "the plaintiff must demonstrate that the defendant created the condition which caused the accident, or that the defendant had actual or constructive notice of the condition." *Salerno v. Eckerd Corp.*, 539 F. Supp. 2d 612, 614 (E.D.N.Y. 2008).

---

[3] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

Likewise, in Hawaii, premises liability attaches "if the possessor knows, or should have known of the unreasonable risk," via actual or constructive notice. *See Gump v. Wal-Mart Stores, Inc.*, 93 Haw. 417, 421 (2000). Because New York and Hawaii apply the same standard for injuries resulting from a fall on a defendant's premises, the court agrees with the parties that there is no conflict of laws. (*See* Mem. at 4; Opp. ¶ 4.)

Mrs. Halouvas does not claim that Defendants created the defect in the ground. Accordingly, she must show that they had actual or constructive notice of the defect. "Actual notice requires the plaintiff to prove that the defendants were, in fact, aware of the dangerous condition." *Quarles v. Columbia Sussex Corp.*, 977 F. Supp. 327, 332 (E.D.N.Y. 1998). "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Nat. Hist.*, 67 N.Y.2d 836, 837 (1986). "A general awareness that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused [a] plaintiff's fall." *Piacquadio v. Recine Realty Corp.*, 84 N.Y.2d 967, 969 (1994).

Here, Mrs. Halouvas's claim must fail because, even resolving all inferences in her favor, there is insufficient evidence that Defendants had actual or constructive notice of the defect. Mrs. Halouvas urges that "prior actual notice can be reasoned by the security guards [sic] own declaration that she knew of it," (Opp. ¶ 12,) but that statement was made to Mr. Halouvas at the scene of the accident, 24 hours after the accident had occurred and after Mr. Halouvas had reported it to hotel staff. Given that context, the guard's statement bears only on Defendants' actual knowledge of the defect after the incident, and not on their knowledge prior to the incident, which is the relevant question. Similarly, there is not sufficient evidence that Defendants had

5

constructive notice of the defect. Neither Mr. nor Mrs. Halouvas could identify where on the ground the defect was, when they were shown pictures of the premises at their depositions. (*See* 56.1 ¶ 23; Pl. Tr. at 77:21-78:18.) The only evidence of the defect in the record are zoomed-in photographs depicting a depression somewhere in the ground—Mr. Halouvas cannot say where—taken the day after the accident, and Mr. Halouvas's testimony. No evidence in the record speaks to Defendants' requisite knowledge of the defect.

Defendants have met their prima facie burden to show that there is no genuine material issue of fact that could lead a juror to conclude that they had notice of the defect. *See Anderson*, 477 U.S. at 248. Mrs. Halouvas is correct when she states that Defendants "have not even described their routines, how often or when the luau floor where plaintiff fell was checked or when it was last checked." (Opp. ¶ 21.) But at summary judgment, it is her burden to point to non-speculative evidence to rebut Defendants' prima facie case and show that a reasonable juror could find that Defendants acted negligently. *See, e.g. Salerno*, 539 F. Supp. 2d at 614 ("[T]he nonmoving party may not rely on conclusory allegations, conjecture, and speculation, and must affirmatively set forth specific facts showing that there is a genuine issue for trial.") Mrs. Halouvas cannot point to any evidence to rebut Defendants' case. Because there is no evidence of actual or constructive notice, the court need not address Mrs. Halouvas's argument that a triable issue exists as to whether the defect in the ground was "trivial" or actionable. *See, e.g. Tincere v. Cnty. of Suffolk*, 90 N.Y.2d 976, 977 (1997).

## IV. CONCLUSION

For the foregoing reasons, Defendants' (Dkt. 34) Motion for Summary Judgment is GRANTED with prejudice. The Clerk of the Court is respectfully DIRECTED to enter judgment for Defendants and close the case.

SO ORDERED.

Dated:   Brooklyn, New York
         January 19, 2021

                                           /s/ Nicholas G. Garaufis
                                           NICHOLAS G. GARAUFIS
                                           United States District Judge